**The STATE of Ohio, Plaintiff,**

v.

**RAMEY, Defendant.**

2006-Ohio-885.]

Court of Common Pleas of Ohio,
Franklin County, Criminal Division.

No. 00CR–04–2650.

Decided Feb. 16, 2006.

Sheryl L. Prichard and Seth L. Gilbert, Assistant Prosecuting Attorneys, for plaintiff.

Mark J. Miller, for defendant.

FRYE, Judge.

## Introduction

{¶ 1} On February 14, 2006, the state filed a written motion seeking to have this court resentence Robert Ramey and specify in a corrected judgment entry his period of mandatory postrelease control. The judgment entry filed on March 8, 2001, does not mention that Ramey would be subject to any period of postrelease control under Ohio law. Without correction of the judgment entry, the state is concerned that the Adult Parole Authority lacks authority to supervise the defendant following his release from imprisonment.

{¶ 2} Ramey pleaded guilty to multiple crimes, following which he was sentenced by Judge Miller in open court on March 6, 2001. Ramey pleaded guilty and was convicted under count two of the indictment for a violation of R.C. 2923.32, a felony of the second degree, for "engaging in a pattern of corrupt activity." Simultaneously he was convicted, following guilty pleas, on multiple violations of R.C. 2913.51, felonies of the fifth degree, for "receiving stolen property."

{¶ 3} The sentences on all of the fifth-degree-felony convictions were ordered to run concurrently with a five-year sentence imposed on the second-degree-felony conviction. The court's sentence was reduced to writing in a judgment entry filed March 8, 2001. Defendant was sentenced to a five-year term of imprisonment with the Ohio Department of Rehabilitation and Correction ("ODRC"). Allowing for jail-time credit, Ramey is now scheduled for release from the ODRC on February 17, 2006, according to the ODRC website, justifying the court's haste in addressing the state's motion filed earlier this week.

## The Factual Record

{¶ 4} Although it is clear that the judgment filed in 2001 did not mention that Ramey would be subject to any period of postrelease control under Ohio law, that subject was covered at some length during the sentencing hearing also held on the record on March 6, 2001. The court specifically stated that defendant would face "a period of post-release control [which would] be imposed following [his] release from prison." Moreover, defendant was specifically cautioned that violations of postrelease control could result in increased prison time or in other potential penalties. Defendant acknowledged at several points during his hearing his understanding of the postrelease-control obligation.

{¶ 5} In addition, as part of the Crim.R. 11 change-of-plea process followed on March 6, 2001, the parties completed a standardized two-page "Entry of Guilty

Plea" form. It was executed by both Ramey and his lawyer. At the top of the second page the form was marked to inform the defendant that he faced "Three years—Mandatory" postrelease control for a conviction of a felony of the second degree, which was the charge to which Ramey was pleading guilty under count two. The form was signed on March 6, 2001, immediately prior to the combined guilty plea colloquy and sentencing hearing. In addition, that form included a paragraph of detailed warnings about the consequences that could result from any violation of postrelease control. Those warnings were printed immediately after the statement of the period of "Three years—Mandatory" postrelease control on page two of the form.

### Ohio Law Regarding Correction of a Judgment Entry

{¶ 6} This court is called upon to address a legal problem today that was identified clearly only last month. *Hernandez v. Kelly*, 108 Ohio St.3d 395, 2006-Ohio-126, 844 N.E.2d 301, clarified Ohio law on the consequences that follow when a trial court has not ordered postrelease control as part of the sentence for a convicted felon. Consistent with the first syllabus paragraph in *State v. Jordan*, 104 Ohio St.3d 21, 2004-Ohio-6085, 817 N.E.2d 864, *Hernandez* held at ¶ 18 that R.C. 2967.28 requires that when a court imposes a prison term, it also sentence the offender to a period of postrelease control following release from imprisonment. *Hernandez* went further than *Jordan* and made clear that when a trial court had not included postrelease control in the sentence, the Adult Parole Authority lacks authority to impose it. Id. at ¶ 27. This result was reached, as explained in the court's unanimous opinion in *Hernandez,* notwithstanding the fact that for various prison sentences (including a felony of the second degree) there is a mandatory period of postrelease control. Postrelease control is, in circumstances like Ramey's, supposed to be essentially automatic. R.C. 2967.28(B).

{¶ 7} There are several divergent lines of legal authority concerning this court's ability to grant the state's request to resentence Ramey. On one side there is the general rule that "[o]nce the trial court has carried into execution a valid sentence * * * it may no longer amend or modify that sentence." *State v. Garretson* (12th Dist., 2000), 140 Ohio App.3d 554, 558, 748 N.E.2d 560, citing *Brook Park v. Necak* (8th Dist., 1986), 30 Ohio App.3d 118, 30 OBR 218, 506 N.E.2d 936. However, as with many legal rules, there are exceptions to this one.

{¶ 8} *Garretson* recognized that a trial court may retain jurisdiction to modify an otherwise valid criminal sentence under "two narrow rules."

First, a trial court does have the authority to correct *void* sentencing orders. A sentence is rendered void when there is an attempt by the court "to

disregard statutory requirements when imposing a sentence." *State v. Beasley* (1984), 14 Ohio St.3d 74, 75, 14 OBR 511, 512, 471 N.E.2d 774, 775.

Second, the trial court may correct clerical mistakes made in judgments or orders at any time. The Rules of Criminal Procedure allow the trial court to correct clerical errors made on the record at any time. * * *

* * * The phrase "clerical mistake" describes "the type of error identified with mistakes in transcription, or omission of any papers and documents." *Dentsply Internatl., Inc. v. Kostas* (1985), 26 Ohio App.3d 116, 118, 26 OBR 327, 328, 498 N.E.2d 1079, 1081.

(Emphasis sic.) 140 Ohio App.3d at 559, 748 N.E.2d 560.

{¶ 9} *Garretson* further held that where a defendant had been sentenced to two years for a felony of the third degree, and that two-year sentence was one of the specified terms of imprisonment available under the general sentencing statute, then the original prison sentence could not be considered void. Id. at 560, 748 N.E.2d 560. However, of more relevance to the present case is *State v. Beasley* (1984), 14 Ohio St.3d 74, 75, 14 OBR 511, 471 N.E.2d 774. That Supreme Court decision held that "[a]ny attempt by a court to disregard statutory requirements when imposing a sentence renders the attempted sentence a nullity or void." Thus, the state argues in its memorandum here, Ramey's sentence as reflected in the judgment entry filed in 2001 was legally void because it neglected to include any reference to postrelease control, even though postrelease control was a mandatory feature of the sentence under the statutes. It also merits mention that *Brook Park v. Necak*, 30 Ohio App.3d 118, 30 OBR 218, 506 N.E.2d 936, held that "the courts can correct legally improper sentences, even if they thereby impose greater penalties. Re-sentencing to impose an omitted mandatory penalty does not violate double jeopardy restraints." 30 Ohio App.2d at 119–120, 283 N.E.2d 662.

{¶ 10} *Jordan*, 104 Ohio St.3d 21, 2004-Ohio-6085, 817 N.E.2d 864, specifically recognized that a trial court that had failed to notify an offender in open court about postrelease control at the sentencing hearing could conduct a resentencing, at least when the journal entry filed after the hearing had referred to postrelease control. Id. at paragraph two of the syllabus. This case involves the opposite situation in that the judgment entry omitted any reference to postrelease control, but the subject had been fully addressed during the oral sentencing hearing as well as in the "Entry of Guilty Plea" form. *Jordan* appears to invite resentencing hearings as the proper way to correct any omission of necessary references to postrelease control.

{¶ 11} In addition to the recent decision in *Jordan*, the recent decision in *State v. Fraley*, 105 Ohio St.3d 13, 2004-Ohio-7110, 821 N.E.2d 995, is also noteworthy. In that decision, the Supreme Court took a very pragmatic view of the formalities

of criminal sentencing under the detailed scheme adopted in Ohio in 1996 and approved use of resentencing hearings to correct another common oversight.

{¶ 12} *Fraley* was a case in which community control had been imposed as the original felony sentence, but the trial judge neglected to specifically notify the defendant of the specific prison term he would face if he committed a violation of community control. (This has become known as a *Brooks* violation, under *State v. Brooks*, 103 Ohio St.3d 134, 2004-Ohio-4746, 814 N.E.2d 837.) The Supreme Court recognized in *Fraley* that when a convicted felon was given a probation-revocation hearing, the hearing was, in substance, a new sentencing at which the earlier *Brooks* violation could be corrected.

{¶ 13} *Fraley* allowed multiple sentencing hearings. They were each triggered by the defendant's violations of community control, followed by restoration of community control, such that there ended up being not only the original sentencing, but three later sentencing hearings following sequential violations of community control. The last of them finally corrected the *Brooks* violation. Following yet another community-control violation, Fraley was imprisoned. Over the dissents of the Chief Justice and Justice Pfeifer, the court held that imprisonment was proper because at a later sentencing hearing the *Brooks* violation had been corrected and the defendant had notice of the prison sanction he faced if he violated community-control once again. The simple statutory words "the sentencing hearing" were not read by the majority of the court as demanding only one, singular sentencing hearing; instead, the court concluded, the language did not preclude holding multiple sentencing hearings. Under the approach to multiple sentencing hearings found lawful in *Jordan* and *Fraley*, it seems to this court that resentencing Ramey is the proper means to correct the oversight in his 2001 judgment entry.

{¶ 14} Of course, the opportunity for multiple resentencing hearings has limitations. *Hernandez* makes clear that once a defendant has completed his or her prison sentence, there can be no further corrections or changes to the sentencing entry. Id. at ¶ 30. Ramey has not yet completed the original five-year sentence imposed March 8, 2001. While he is within about a day of that release date, this resentencing is, in this court's view, still timely.

**Court's Decision to Correct the Original Judgment Entry**

{¶ 15} The decisions addressing a trial judge's limited authority to modify a criminal sentence once imprisonment has begun largely approach the topic from the standpoint that if modification were freely allowed, "the defendant would have no assurance about the punishment's finality." See, e.g., *State v. Longmire*, 11th Dist. No. 2001–P–0014, 2002-Ohio-7153, 2002 WL 31862676, at ¶ 15, citing *Brook Park v. Necak*, supra. Beyond that, there is a conceptual concern that all criminal law in Ohio is statutory in nature, such that a trial court retains no

inherent power to amend or modify a previous criminal judgment absent clear statutory authorization. *State v. Steele,* 10th Dist. No. 05AP–92, 2005-Ohio-4786, 2005 WL 2210663, ¶ 8–9, *State v. Moore,* 4th Dist. No. 03CA18, 2004-Ohio-3977, 2004 WL 1689674, ¶ 10.

{¶ 16} This court concludes that in this particular circumstance it has the authority to correct the original judgment entry and to make explicit what was surely very clear to everyone in March 2001. It does no violence to the defendant's rights—that is, his expectation of the term of punishment that would result from his March 2001 guilty pleas—to correct the judgment entry. It likewise does no violence to the plain intentions of the General Assembly as expressed in the criminal sentencing laws to correct this judgment entry. Whether, technically speaking, this is considered a correction of a void judgment that overlooked a mandatory part of the sentence or merely as a correction of a clerical mistake, either type of alteration to the original judgment entry is permitted by well-established Ohio law as reviewed above.

{¶ 17} Furthermore, Ramey is not prejudiced. As in *Fraley,* supra, Ramey is merely being given an additional written notice of a legal obligation that ties squarely to his original conviction, and this new written clarification is being given before he begins postrelease control. Nothing done today extends the duration of imprisonment or of the postrelease-control period beyond what was explicitly discussed with Ramey in March 2001. That is, nothing done here will enhance his original sentence beyond what he expected.

{¶ 18} Pragmatically speaking, it is undisputed that at the time of his guilty plea and sentence in 2001, Ramey was explicitly apprised of the three-year, mandatory, postrelease-control obligation he faced. The written guilty plea form and the colloquy on the record in open court both confirmed Ramey's actual awareness of postrelease control and its implications for his life following imprisonment. Postrelease control clearly was within the contemplation of all parties and the court at the time of the original sentencing. Despite the limitations on the power reserved to trial judges to correct criminal sentences under Ohio law, correction of this judgment entry is proper.

{¶ 19} The motion for resentencing filed February 14, 2006, is granted, and a corrected judgment entry will be issued this date.

Motion granted.